ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO. 1:16CR203 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Judge John R. Adams |
| DARRYL FARMER, ) | |
| ) | ORDER |
| Defendant. ) | |
| ) | |

Pending before the Court is Defendant Darryl E. Farmer's motion for compassionate release. The motion is DENIED.

COVID-19 is an abbreviation for the novel coronavirus disease of 2019, a respiratory illness that spreads easily and sustainably in the community through respiratory droplets produced when an infected person coughs or sneezes. See Centers for Disease Control and Prevention Coronavirus Disease 2019 Frequently Asked Questions, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#How-COVID-19-Spreads (last visited April 24, 2020). The novel coronavirus of 2019 is a serious disease, ranging from no symptoms or mild ones for people at low risk, to respiratory failure and death in older patients and patients with chronic underlying conditions. *Id*. The virus has been detected in asymptomatic persons, and its incubation period is believed to be up to fourteen days in duration. *Id*.

Currently, there is no vaccine to prevent COVID-19, nor is there antiviral medication that can treat it. *Id.* According to the CDC, "[t]he best way to prevent illness is to avoid being exposed to the virus." *Id*. The CDC recommends, among other things, that people clean their hands often or

use hand sanitizer when soap is unavailable, avoid close contact with other people (at least six feet in distance), and clean and disinfect frequently touched surfaces daily, such as tables, doorknobs, light switches, and countertops. *Id*. The CDC also recommends that if an individual becomes sick, he or she should isolate from others by staying in a specific sick room and using a separate bathroom if possible. *Id*.

The CDC has also indicated that certain classes of individuals are at higher risk for developing severe illness if exposed to the novel coronavirus of 2019. *Id*. Older adults – 65 or older – and people suffering from underlying medical conditions such as moderate to severe asthma, chronic lung disease, serious heart disease, severe obesity, diabetes, liver disease, kidney disease or people who are immunocompromised such as those who are undergoing cancer treatment, smokers, bone marrow or organ transplant recipients or donors, people with immune deficiencies, poorly controlled HIV or AIDS sufferers and those who have prolonged use of corticosteroids and other immune weakening medications are at higher risk of developing serious illness if they are exposed to COVID-19. *Id*. Additionally, the CDC reports that "[a]pproximately 90% of hospitalized patients identified ... had one or more underlying conditions, the most common being obesity, hypertension, chronic lung disease, diabetes mellitus, and cardiovascular disease." *Id*.

Defendants seeks release from Devens FMC. The Court now examines his arguments.

I.  Exhaustion

The sentencing court has no inherent authority to modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston*, 529 F.3d 743, 748–49

(6th Cir. 2008) (citing *United States v. Ross*, 245 F.3d 577, 858 (6th Cir. 2001)). Title 18 U.S.C. § 3582(c)(1)(A) provides that courts may "reduce [an inmate's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" where "extraordinary and compelling reasons warrant [release]," or the prisoner's age and other factors make release appropriate. 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018, only the Bureau of Prisons ("BOP") could move a district court under § 3582(c)(1)(A) for the compassionate release of a federal prisoner. On December 21, 2018, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release. The amendment provides prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release, or (2) file a motion after "the lapse of 30 days from the receipt . . . of such a request" by the warden of the prisoner's facility. 18 U.S.C. § 3582(c)(1)(A). No exceptions to the exhaustion requirement are listed in the statute. In that regard, the Sixth Circuit has noted that there are no exceptions to the provisions detailed above. "Just one published decision of a federal court of appeals has faced a circumstance in which a prisoner failed to comply with the § 3582(c)(1)(A) administrative exhaustion requirement. That court found the omission a "glaring roadblock foreclosing compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). We agree." *United States v. Alam*, 960 F.3d 831, 835 (6th Cir. 2020). While the Government asserts that Farmer has not *fully* exhausted his administrative appeals, the record appears to demonstrate that his motion occurred more than 30 days after his request to the warden was made. Accordingly, the Court will address the merits of his motion.

3

II.     § 3553(a) Factors

    a. Standard

As noted above, this Court may "not modify a term of imprisonment once it has been imposed" unless specifically authorized to do so by section 3582(c). This Court may grant compassionate release if, after considering the factors in 18 U.S.C. § 3553(a), it determines that "extraordinary and compelling reasons" warrant a reduced sentence and that "such a reduction is consistent with applicable policy statements issued by the sentencing commission." 18 U.S.C. § 3582(c)(1)(A)(i). The relevant governing policy statement provides that this Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. §1B1.13.   For ease of reference, the § 3553 factors are as follows:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

4

> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

18 U.S.C.A. § 3553.

When evaluating the § 3553(a) factors, many district courts have considered the amount of time remaining on a defendant's sentence in considering whether to grant compassionate release. *See, e.g., United States v. Bogdanoff*, No. 12-cr-190-1, ⸺ F. Supp. 3d ⸺, ⸺, 2020 WL 2307315, at *6 (E.D. Pa. May 8, 2020) (denying compassionate release where the inmate had served only seven years of an 18-year sentence, and noting that the case was "much different than others where defendants [sought compassionate release] at the end of their sentence"); *United States v. Moskop*, No. 11-cr-30077, 2020 WL 1862636, at *1–2 (S.D. Ill. Apr. 14, 2020) (denying compassionate release where the inmate had served less than 10 years of a 20-year sentence and explaining that the "sentencing objectives of specific deterrence and protecting the public [would] not [be] fully served by less than 10 years of incarceration"). Courts have also examined the specific health defects set forth by defendants along with the conditions present in their specific place of incarceration. *See United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying motion for compassionate release where defendant was purportedly suffering from diabetes and hypertension but court found that "speculation as to whether COVID-19 will spread through Defendant's detention facility, FCI Morgantown, whether Defendant will contract COVID-19, and whether he will develop serious complications [did] not justify the extreme remedy of compassionate release" because defendant's medical conditions

were "not out of the ordinary," defendant did not claim they were "fatal or untreatable," and there were no confirmed cases of COVID-19 at defendant's facility); *United States v. Phillips*, No. 12-20372, 2020 WL 3071849, at *4 (E.D. Mich. June 10, 2020) (finding that "50-year-old man in fairly good health" with diabetes and hypertension "managed with prescription medications" did not present extraordinary and compelling reasons for release and noting that defendant's fear of contracting COVID-19 at FCI Loretto was speculative where there were no confirmed cases at the facility); *United States v. Gamble*, No. 3:18-cr-22-4, 2020 WL 1955338, at *4–5 (D. Conn. Apr. 23, 2020) (finding no extraordinary or compelling reasons where defendant suffering from diabetes did not claim or provide evidence that his diabetes was not being and could not be controlled by medication and where defendant had not demonstrated that BOP could not contain the spread of the virus at his facility or treat defendant if infected). These facility-specific reviews are necessary because "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

    b. Analysis

Initially, the Court notes that the Bureau of Prisons current calculation of Farmer's remaining sentence indicates a release date of September of 2021. As such, it appears that Farmer has served a substantial majority of the aggregate 70-month sentence imposed by this Court on January 9, 2017. Farmer has argued that compelling reasons exist for his release to home confinement. Those reasons include his vulnerability to COVID-19 based on his medical conditions that he describes as "hypertension, diabetes and end-stage renal disease." Doc. 64 at 5.

In support of his motion, Farmer has not provided the Court with any information about the

6

existence of COVID-19 at his place of incarceration, FMC Devens.  While Farmer alleges that social distancing and proper hygiene are not possible with FMC Devens, he has provided nothing specific with respect to COVID-19.  A review of the information publicly available through the Bureau of Prisons indicates that as of July 13, 2019, FMC Devens has 7 active, positive cases among its 919 inmates.[1]  The BOP reports a total of 2 inmate deaths and no staff deaths at FMC Devens from COVID-19.  As such, it does not appear that the conditions at FMC Devens present a substantial risk to its inmate population.

In addition, while Farmer has presented medical evidence of his underlying conditions, there is nothing in those records to suggest that his conditions are currently life threatening.  Instead, the records provided in support of the motion demonstrate that Farmer's conditions have been well managed by FMC Devens.  The records indicate regular dialysis for Farmer's renal failure and a daily regimen of medication and supplements to manage his remaining conditions.

However, the Court notes that even if Farmer had presented that a more dire situation existed at FMC Devens, his prior history would still weigh against granting his release.  Farmer was indicted on June 21, 2016.  After his arraignment on July 5, 2016, Farmer was detained pending a formal detention hearing.  Following numerous hearing, an interlocutory appeal, and supplemental filings related to Farmer's medical conditions, he was ultimately placed out on bond on September 12, 2016.  His bond was revoked when he left his home for more than four hours without the permission of his probation officer, failed to attend a medical appointment scheduled during the time, and lied to his probation officer about having attended the appointment.

---

[1] *See* https://www.bop.gov/coronavirus/ (last visited on 7/20/2020).   BOP data also indicates that 46 inmates and 6 staff have recovered from prior positive tests for COVID-19.

On October 3, 2016, Farmer pled guilty pursuant to a plea agreement to all 22 counts in the indictment. Those counts included one count of conspiracy to defraud the government, nine counts of false claims against the government, eight counts of assisting in the preparation of false tax returns, two counts of wire fraud, and two counts of aggravated identity theft. At the time of his conduct that led to these convictions, Farmer was under supervision for his prior federal conviction for bank fraud. It is this latter fact, coupled with Farmer's criminal history, that weigh heavily against reducing his sentence in any capacity.

In this matter, Farmer claimed: "I was not a licensed preparer nor did I know enough about taxes to try such a thing. I was way over my head and made some dumb choices!" Doc. 46 at 11. However, his claims of ignorance are undermined by his own conduct. Farmer's prior bank fraud conviction involved his use of numerous false loan applications and at least one shell company in an effort to funnel money from the ill-gotten loans. Thus, Farmer's claims of financial ignorance ring hollow. Similarly, Farmer was less than forthright when identifying his assets following his guilty plea in this matter.

> Information was developed after first disclosure that on January 4, 2016, the defendant transferred a property, 10732 Goodling Avenue, Cleveland, Ohio, Parcel No. 109-13-099, to his company Press Mark Holding, LLC. Three days later on January 7, 2016, he claimed in a Financial Affidavit, in support of the Federal Public Defender's appointment, that he had real estate property of $5,000, which he described as "abandoned rental property." On February 16, 2016, the property was again transferred from the defendant's company to a Janis Durant. Records obtained from the County Fiscal Office reflect that the estimated market value of property at the time of the transfer on February 16, 2016, was $19,400. His statement filed with the Court is not consistent with his real estate holdings or this transfer.

Doc. 46 at 10. Farmer's conduct, therefore, demonstrates a far higher level of sophistication than he has admitted to the Court.

8

Furthermore, Farmer's criminal conduct could all-too-easily occur while under home incarceration or supervised release. While the Court could forbid Farmer from engaging in the preparation of tax returns while under supervised release or home incarceration, Farmer has already demonstrated a willingness to disobey the terms of supervised release. Further, Farmer's conduct that led to his guilty plea herein was conducted via his laptop. As such, he could easily fall back into his criminal conduct if placed into home incarceration. Accordingly, this Court finds that Farmer would still present an economic danger to the community were he to be released.

Based upon the above, Farmer has failed to demonstrate that his medical conditions present extraordinary or compelling circumstances that warrant modification of his sentence. Additionally, a review of the § 3553(a) factors weigh against granting the relief sought by Farmer. The motion for compassionate release therefore is DENIED.

    IT IS SO ORDERED.

July 20, 2020                             /s/John R. Adams
Date                                   JOHN R. ADAMS
                                         UNITED STATES DISTRICT JUDGE